TAGGED OPINION



ORDERED in the Southern District of Florida on May 20, 2011.

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE                                              Case No. 10-37575-BKC-LMI

GUSTAVO ARISTEDES ABAUNZA                          Chapter 13
and KATIA MARIA ABAUNZA,

        Debtors.
_____/

### ORDER OVERRULING THE OBJECTION OF
### THE CHAPTER 13 TRUSTEE TO CONFIRMATION

This matter came before me on March 16, 2011 on the Notice of Deficiency (ECF #31) filed by the Chapter 13 Trustee, Nancy Herkert (the "Trustee") in which the Trustee objected to the confirmation of the Debtor's proposed Chapter 13 Plan. The issue before me is whether above-median debtors can use their "discretionary income" to pay a creditor outside a Chapter 13 plan so long as all of the debtor's projected disposable income ("PDI") is committed to paying the unsecured creditors under the plan. Having considered the relevant pleadings, the arguments of counsel, and the applicable law, for the reasons set forth below, I answer this question in the affirmative and therefore overrule the Trustee's objection to confirmation.[1]

---

[1] The Chapter 13 Trustee and the Debtors also disagree whether the Debtors have correctly calculated their PDI. That dispute is not addressed in this opinion. The Trustee has filed an additional objection to confirmation based on the PDI calculation, which objection will be addressed separately.

Case No. 10-37575-BKC-LMI

## BACKGROUND FACTS

The Debtors, Gustavo Aristides Abaunza and Katia Maria Abaunza, filed their Chapter 13 petition (ECF #1) on September 15, 2010. In their petition, the Debtors indicated that their assets were between $100,000 and $500,000 and that they had liabilities between $500,000 and $1,000.000. In their Schedules and Statement of Financial Affairs (ECF #13) filed on October 28, 2010, the Debtors listed total secured claims in the amount of $134,882.53 and total unsecured claims in the amount of $601,614.26. As part of their unsecured claims, the Debtors listed in their Schedule F a student loan debt (the "Student Loan Debt") owed to the United States Dept. of Education in the amount of $7,204.58. In their Schedule J, the Debtors indicated that they are currently making monthly student loan payments of $95.00.

Between October 28, 2010 and April 5, 2011, the Debtors modified their Chapter 13 Plan and Statement of Current Monthly Income several times. While the PDI figures have changed in the modified Plans, the Debtors have consistently proposed to pay all of their PDI to unsecured creditors and have proposed to make their monthly student loan payments outside the Plan. Under the Debtors' Fourth Amended Chapter 13 Plan (the "Plan") (ECF #71), to which the Chapter 13 Trustee objected[2], unsecured creditors will receive a projected dividend over the five years of .86%. The Student Loan Debt will, during the same period, be kept current, ultimately being paid in full. The Debtors are able to pay the Student Loan Debt because their actual

---

[2] The Debtors have since filed a Fifth Amended Chapter 13 Plan (ECF #81). The Trustee has not filed an objection to this Plan.

expenses are less than their expenses as calculated under the means test[3] for purposes of determining PDI. The Debtors refer to this excess income above the PDI as "discretionary income." The Chapter 13 Trustee objects to the Debtors' Fourth Amended Plan arguing that the Debtors' payments made directly to the Debtors' student loan creditors discriminate unfairly against the other unsecured creditors.

## ANALYSIS

11 U.S.C. §1322 lays out what a Chapter 13 Plan must or may include in order to be confirmable. 11 U.S.C. §1322(a)(3) requires that "if the plan classifies claims, [it shall] provide the same treatment for each claim within a particular class." 11 U.S.C. §1322(a)(3). With respect to classification of claims, subsection 1322(b) provides:

(b) Subject to subsections (a) and (c) of this section, the plan may –

---

[3] The Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA") added the means test, as codified in 11 U.S.C. §707(b)(1)-(2), to Chapter 7 of the Bankruptcy Code. The means test provides a formula for determining the amount of disposable income a Chapter 7 debtor could hypothetically contribute to a Chapter 13 plan. *In re Ralston*, 400 B.R. 854, 856 (Bankr. M.D. Fla. 2009). Under the means test,

> [A] debtor's monthly disposable income is calculated by taking the debtor's current monthly income, as defined in § 101(10A) . . . and subtracting the allowable monthly expenses delineated in § 707(b)(2), consisting of the following five categories: 1) applicable monthly expense amounts specified under the IRS National Standards and Local Standards, 2) actual monthly expenses for the categories listed in the IRS Other Necessary Expenses, 3) various specified actual expenses . . . 4) monthly payments contractually due on secured debts, and 5) monthly payments on priority claims. 11 U.S.C. § 707(b)(2)(A)(ii)-(iv). If, after subtracting the allowable monthly expenses from the debtor's [current monthly income], the amount of monthly disposable income, multiplied by 60, is greater than $10,950, then the debtor 'fails' the Means Test.

*Id.* at 858. If the debtor "fails" the means test, absent a showing of special circumstances, the court "shall presume abuse exists" and the case must be converted to a case under Chapter 13. *Id.* at 858-59. Chapter 13 borrows the means test from Chapter 7. In Chapter 13 proceedings, "the means test provides a formula to calculate a debtor's disposable income, which the debtor must devote to reimbursing creditors under a court-approved plan generally lasting from three to five years. §§ 1325(b)(1)(B) and (b)(4)" *Ransom v. FIA Card Servs., N.A.*, 131 S.Ct. 716, 721 (2011).

> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; …

11 U.S.C. §1322(b)(1). [4] Thus, a chapter 13 plan may only place substantially similar claims in the same class, 11 U.S.C. §1122(a), and, must provide the same treatment to all claims within a particular class, 11 U.S.C. §1322(a)(3). As the Bankruptcy Code provides, and as courts have noted, section 1322(b)(1) permits separate classification of unsecured claims. *In re Sharp*, 415 B.R. 803, 807 (Bankr. D. Colo. 2009). There is no prohibition of separately classifying similar claims. *Mickelson v. Leser* (*In re Leser*), 939 F.2d 669, 671 (8th Cir. 1991); *In re Potgeiter*, 436 B.R. 739 (Bankr. M.D. Fla. 2010). However, if claims are in fact separately classified, the debtor may not "discriminate unfairly" among these separate classes.

In this case, I must decide two issues. The first is whether, if a debtor pays a creditor "outside" a Chapter 13 bankruptcy plan, such payment outside the plan constitutes de facto separate classification of such creditor. If I answer this question in the affirmative, I must then decide whether, when a debtor proposes to pay a creditor with funds in excess of that which the Bankruptcy Code requires such debtor pay to his or her unsecured creditors, such use of the excess funds constitutes unfair discrimination.

---

[4] 11 U.S.C. §1122 specifically governs the classification of claims and interests in plans under Chapter 11 of the Bankruptcy Code, as follows:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

1.    **Classification**

The Trustee argues that payment of the Student Loan Debt outside the Chapter 13 Plan is a "de facto" separate classification. In support of her argument, the Trustee relies on several cases in which the court held that payment of a student loan debt outside the plan triggers an unfair discrimination analysis under 11 U.S.C. §1322(b)(1) and therefore, at least implicitly, such courts have found that such a plan creates de facto classes. *See, e.g., In re Edwards*, 263 B.R. 690 (Bankr. D.R.I. 2001) (debtor could not make payments to student loan creditor outside of plan while paying nothing to other unsecured creditors without a showing that the plan did not unfairly discriminate); *In re Cox*, 186 B.R. 744 (Bankr. N.D. Fla. 1995) (court conducted unfair discrimination analysis of plan which proposed to pay non-dischargeable student loans outside of plan).

In response to the Trustee's argument, the Debtors note that all of the cases upon which the Trustee relies were decided before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[5] The Debtors argue that pre-BAPCPA cases that addressed de facto classification did so solely in the context of unfair discrimination, a concept that no longer applies when "discretionary income" is being used to make payments outside the plan.

In reviewing post-BAPCPA cases, I could find only one case that explicitly supports the Trustee's position that student loan payments made outside a plan constitute a "de facto" class. In *Sharp*, the court noted that "a payment to a creditor 'outside the plan' can amount to an

---

[5] BAPCPA was enacted on April 20, 2005 and became effective on October 17, 2005.

5

implicit classification, even though not specifically referenced in the plan." 415 B.R. at 807. However, in other cases where debtors have made payments to student loan creditors outside the plan, the vast majority of post-BAPCPA courts have reviewed whether the proposed different treatment constituted unfair discrimination, thereby, as before BAPCPA, implicitly, if not explicitly, ruling that payment to a creditor outside the plan constitutes de facto classification. *See, e.g., In re Potgieter*, 436 B.R. 739 (court conducted unfair discrimination analysis of Chapter 13 plan which provided for student loan payments outside the plan); *In re Orawsky*, 387 B.R. 128 (Bankr. E.D. Penn. 2008) (same).

I agree with the approach adopted in cases such as *Sharp*, *Orawsky*, and *Potgieter,* and decline to accept the Debtors' somewhat circular argument that if there is no unfair discrimination there is no de facto separate classification. Such an approach is in direct contradiction to the order of analysis dictated by section 1322(b) which addresses unfair discrimination in the context of separate classification, not vice-versa. Accordingly, I hold that when a debtor proposes to pay an unsecured creditor outside his or her chapter 13 plan, this constitutes separate classification of a claim.[6] Thus, I now turn to the issue of unfair discrimination.

## 2. Unfair Discrimination

The Trustee argues that the Plan discriminates unfairly because the Student Loan Debt

---

[6] I reject the Trustee's argument that there is almost no circumstance under which a student loan may be separately classified and that this case is not such a circumstance. As already discussed, section 1122 of the Bankruptcy Code, and therefore, section 1322 as well, allow separate classification of even similar claims. The Bankruptcy Code mandates only that similar claims *may* be in the same class, that dissimilar claims may *not* be in the same class, that claims within the same class must be treated the same, and that no separate class may be unfairly discriminated against. 11 U.S.C. §1322(a)(3) and §1322(b)(1).

Case No. 10-37575-BKC-LMI

will be paid in full over the sixty months of the Plan, while other unsecured creditors will receive a dividend of less than 1%.[7] Once again, citing only to pre-BABCPA cases, the Trustee reiterates her argument that in almost every circumstance, and certainly when the basis is solely non-dischargeability of a debt, separate classification, and different treatment, of a student loan debt constitutes unfair discrimination.[8] The Debtors counter that those cases relied upon by the Trustee in support of her argument are no longer relevant to chapter 13 above-median debtors[9] after the enactment of BAPCPA. Having reviewed the cases and the changes to chapter 13 made by BAPCPA, I find the Debtors' argument more persuasive.

The Bankruptcy Code does not define "unfair discrimination." "The concept of unfair discrimination was designed to maintain equity among creditors of equal priority. The legislative history has proven to be too scant to provide further guidance beyond this level of generality." *In re Orawsky*, 387 B.R. at 141 (citing Stephen L. Sepinuck, *Rethinking Unfair Discrimination in Chapter 13*, 74 Am. Bankr. L.J. 341, 347-49 (2000); Bruce A. Markell, *A New*

---

[7] As noted earlier, the Debtors have modified their Plan several times, but no iteration, including the current Plan on file, proposes to pay other unsecured creditors a dividend even remotely close to the percentage the Student Loan Debt will be paid.

[8] 11 U.S.C. §1322(b)(5) provides that a chapter 13 plan shall "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Some courts have held that this section justifies separate classification and treatment of long term, unsecured debt, such as a student loan, and there is no need to address whether the separate classification and treatment constitutes unfair discrimination. *See In re Truss*, 404 B.R. 329 (Bankr. E. D.Wisc. 2009); *accord In re Knight*, 370 B.R. 429 (Bankr. N.D. Ga. 2007). Conversely, other courts have held that section 1322(b)(5) does not trump section 1322(a)(1) and a debtor seeking separate classification approval may not rely solely on section 1332(b)(5), but must also separately satisfy section 1322(b)(1). *See In re Harding*, 423 B.R. 568 (Bankr. S.D. Fla. 2010); *In re Edwards*, 263 B.R. 690 (Bankr. D.R.I. 2001); *accord In re Webb*, 370 B.R. 418 (Bankr. N.D. Ga. 2007). Neither the Trustee nor the Debtors have relied on section 1322(b)(5) as part of their analysis.

[9] Above-median debtor is defined as a debtor whose annualized current monthly income is above the median family income in the applicable state that corresponds to the size of the debtor's household. See 11 U.S.C. §1325(b)(3). The Debtors qualify as above-median debtors.

*Perspective on Unfair Discrimination in Chapter 11*, 72 Am. Bankr. L.J. 227, 230-31 (1998); *see also In re Simmons*, 288 B.R. 737, 744-48 (Bankr. N.D. Tex. 2003)). Consequently, different courts have developed a variety of tests to determine whether a plan unfairly discriminates between unsecured creditors.[10]

Prior to the enactment of BAPCPA, the majority of courts applied some variation of a multi-factor test in making their unfair discrimination assessments. Perhaps the most widely used test pre-BAPCPA was set forth by the Eight Circuit in the *Leser* decision.[11] The *Leser* test has four components: (1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination. 939 F.2d at 672. One inherently problematic aspect of any multi-factor test, such as the *Leser* test, is that it relies on the individual facts of each case. Judge Posner commented on the subjective nature of the most widely-used unfair discrimination tests noting, "that this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to see a result that is reasonable in light of the purposes of the relevant law." *In re Crawford*, 324 F.3d 539, 542 (7th Cir. 2003). No one test was adopted by, or seems to have been dominant in, the Eleventh Circuit.

The focus of the unfair discrimination test in the context of chapter 13 plans has almost

---

[10] *See* 6 A.L.R. Fed. 2d 507 for a thorough discussion of the various tests used by courts in evaluating unfair discrimination. See also *Orawsky*, 387 B.R. at 141-45, for a detailed description of a number of multi-factor tests.

[11] *In re Leser*, 939 F.2d 669. This test has also been labeled the "*Leser/Wolff*" test as elements virtually identical to those adopted by the Ninth Circuit Bankruptcy Appellate Panel in *Amfac Distrib. Corp. v. Wolff* (*In re Wolff*), 22 B.R. 510 (9th Cir. B.A.P. 1982).

always been the disparity in payment between different classes of creditors and the justification for the disparity. In chapter 13, a debtor is required to pay money in excess of statutorily defined "needs" to his or her unsecured creditors over the life of the plan. Before BAPCPA was enacted, the Bankruptcy Code defined that excess as disposable income, that is, "'income which is received by the debtor and which is not reasonably necessary to be expended' for the 'maintenance and support of the debtor,' for qualifying charitable contributions, or for business expenditures." 11 U.S.C. §1325(b)(2)(A), (B) (2000).

Thus, in determining whether a chapter 13 debtor unfairly discriminated against a particular class of creditors, the courts analyzed the appropriateness of the separate differentiated treatment against the backdrop of determining whether the debtor had committed the necessary funding to his or her chapter 13 plan. The appropriateness of the proposed funding was determined by the courts in the context of what was necessary for maintenance and support, charitable contributions or business expenditures. Everything else had to be used to pay creditors under the chapter 13 plan. Thus, any discrimination in treatment, any disparity in payment, resulted in slicing a finite pie into unequal rather than equal slices.

Congress enacted BAPCPA to correct "perceived abuses of the bankruptcy system." *Ransom v. FIA Card Servs., N.A.*, 131 S.Ct. 716, 721 (2011). BAPCPA introduced sweeping changes in the methodology used by the bankruptcy courts to calculate disposable income for debtors in Chapter 13 cases, and in particular, adopted the means test which has been described as "[t]he heart of [BAPCPA's] consumer bankruptcy reforms." *Id.* (quoting H.R. Rep. No. 109-31, pt. 1, p. 2 (2005)). Congress attempted to standardize the process by which disposable

9

income (now called "projected disposable income" – "PDI"), was calculated. 11 U.S.C. §1325(b)(1) now provides, in pertinent part, that:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> > (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. §1325(b)(1)(B).

The Bankruptcy Code does not define the term "projected disposable income," but it does define "disposable income" as "current monthly income received by the debtor" less "amounts reasonably necessary to be expended" for the debtor's maintenance and support, for qualifying charitable contributions, and for business expenditures. 11 U.S.C. §1325(b)(2)(A)(i) and (ii). "Current monthly income" or "CMI," is calculated by averaging the debtor's monthly income over the six months preceding the filing of the bankruptcy petition. *Hamilton v. Lanning*, 130 S.Ct. 2464, 2470 (2010). For a debtor whose income exceeds the median in his or her state, an above-median debtor, §1325(b)(3) directs that the means test, codified in 11 U.S.C. §707(b)(2)(A), identifies which expenses qualify as "amounts reasonably necessary to be expended." The provisions of section 707(b)(2)(A) are intended to provide some measure of uniformity in calculating the monthly disposable income for above-median debtors. *See* 146 Cong. Rec. S11683-02, at S11703 (Dec. 7, 2000) (statement of Sen. Grassley) ("It is intended that there be a uniform, nationwide standard to determine disposable income used in chapter 13 cases, based upon means test calculations."). As noted by the *Sharp* court, "BAPCPA altered the

calculation of 'projected disposable income' which an above-median income debtor must commit to a plan (assuming a creditor or the trustee objects) and added a requirement that a debtor pay his or her PDI to unsecured creditors," and for that reason "PDI is essentially the 'pot' that a debtor must distribute to unsecured creditors in a manner that does not unfairly discriminate." 415 B.R. at 810.

As a result of the BAPCPA amendments, however, a disconnect now exists between the calculation of PDI and a debtor's actual income and expenses, and there can be situations, such as the one currently before me, in which "a debtor's actual monthly income will exceed PDI, thus allowing a debtor to make payments (above PDI) to a student loan or other creditor." *Id.* at 812. Justice Sotomayor noted this anomaly in *Ransom*.

> [T]his kind of oddity [a disconnect between the CMI test and reality] is the inevitable result of a standardized formula like the means test, … [s]uch formulas are by their nature over- and under-inclusive. In eliminating the pre-BAPCPA case-by-case adjudication of above-median-income debtor's expenses, on the ground that it lent itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces.

131 S.Ct. at 729.

Consequently, a Chapter 13 plan can be confirmed even if it does not propose to pay all nonpriority unsecured claims in full as long as the plan commits all of the debtor's PDI towards the unsecured claims. *Sharp*, 415 B.R. at 808. Some courts, as highlighted by the Debtors, have referred to this extra income as "discretionary income."

Each of the cases cited by the Trustee in her Memorandum of Law (ECF #34) was decided before BAPCPA became effective. The pre-BAPCPA statutory framework, and the

11

Case No. 10-37575-BKC-LMI

resulting case law, based on a very fact-specific analysis, are no longer relevant to the issue of unfair discrimination based on a disparity of treatment between unsecured creditors where (a) the debtor is an above-median income debtor and (b) all the PDI is being dedicated to pay unsecured debt under the plan other than to the creditor or creditors receiving different treatment.[12]

Since the passage of BAPCPA, a number of courts have addressed the issue of whether a debtor making payments to student loan lenders outside a chapter 13 plan unfairly discriminates against other unsecured creditors being paid pro rata under the plan. In each instance where the court has analyzed whether payment outside the plan constituted unfair discrimination, the court examined how much the unsecured creditors being paid in the plan were receiving. Where all PDI was being paid to those unsecured creditors, the courts have held there was no unfair discrimination. Conversely, where the debtor proposed to use his or her PDI to pay all creditors, including creditors separately classified (in or out of the plan) and differently treated, the courts have reverted to a fact-based analysis, using either the *Leser/Wolf* test or other unfair discrimination tests that have developed. *See e.g., In re Kalfayan*, 415 B.R. 907 (Bankr. S.D. Fla. 2009) (applying the *Machado* test (*In re Machado*, 378 B.R. 14 (Bankr. D. Mass. 2007)) in holding that separate classification and different treatment of a non-dischargeable student loan was not unfair discrimination as it was necessary for the debtor to maintain her student loan payments to keep her professional license and thus make her plan payments); *see also In re*

---

[12] There is a variation of the issue before me that could change the analysis, but I need not address how such a scenario would be resolved – that is, what if a debtor were committing his full PDI in the plan, but proposed to pay his PDI to different unsecured creditors differently? *See e.g., In re Kalfayan*, 415 B.R. 907 (Bankr. S.D Fla. 2009) (discriminatory classification of student loans was not unfair as it was necessary for debtor to maintain student loan payments to keep her professional license).

12

*Boscaccy*, 442 B.R. 501, 510 (Bankr. N.D. Miss. 2010) (finding no unfair discrimination in plan which proposed to pay student loan debt outside the plan while paying other unsecured creditors only 10% of their claims); *Potgieter*, 436 B.R. 739, 743 (finding discrimination not "unfair" in a 100% plan); *In re Harding*, 423 B.R. 568, 578 (Bankr. S.D. Fla. 2010) (applying three-part balancing test to find that separate classification and payment of student loan debt was unfairly discriminatory under the circumstances); *In re Martellaro*, 404 B.R. 548, 560 (Bankr. D. Mont. 2008) (finding discriminatory treatment of student loan payment to be unfair).

Two cases have directly addressed the issue before me. In *Sharp*, 415 B.R. 803, the debtor proposed to pay student loan lenders both outside the plan with "discretionary income" and inside the plan pro rata with other unsecured creditors using the calculated PDI. In overruling the chapter 13 trustee's objections to confirmation the court held that the debtor's plan did not unfairly discriminate against separately classified general unsecured creditors, since those creditors would be receiving "all they are entitled to receive under § 1325(b)." *Id.* at 812. The *Sharp* court observed that a finding of unfair discrimination when other unsecured creditors were receiving all the debtor's PDI "would subvert the disposable income test in § 1325(b) by requiring a debtor to pay more than PDI to unsecured creditors." *Id.* The court concluded that it would not "use the unfair discrimination test as a way around the new PDI calculation imposed by BAPCPA." *Id.* With respect to the pro rata student loan payments made inside the plan, the court again found these payments not to be unfairly discriminatory, noting that the debtors' student loan and non-student loan creditors were receiving "exactly what the Code requires the Debtors to pay them – a pro rata payment of PDI." *Id.* at 813.

Case No. 10-37575-BKC-LMI

In *Orawsky*, 387 B.R. 128, the court held that a debtor who proposed to pay her student loan creditor with discretionary funds did not unfairly discriminate against her non-student loan unsecured creditors. The debtor's PDI was $0.00, but the debtor nonetheless proposed a plan that devoted $317.00 each month to unsecured creditors. Under the plan, the debtor would pay $217.00 directly to her student loan creditor and $100.00 to the trustee for distribution to holders of allowed administrative expenses. The debtor argued, as the Debtors argue in this case, that her non-student loan creditors would fare far worse if she included her student loan claim together with the unsecured claims and made payments pro rata to all the unsecured creditors, as the student loan claim would significantly dilute the funds available to other creditors. *Id.* at 149.

The court began its analysis by identifying a "framework for analyzing the issue of unfair discrimination against the backdrop of chapter 13 policy." *Id.* at 146. The court utilized the test set forth in *Bentley v. Boyajian* (*In re Bentley*), 266 B.R. 229 (1st Cir. B.A.P. 2001), which began with "the core principles and policies of chapter 13 [to] provide a 'baseline' for calculating a plan that proposes to deviate from that baseline." *Id.* at 147. The court then applied the four baselines identified by the *Bentley* court – (1) equality of distribution, (2) non-priority of student loans, (3) contributions mandatory or optional and (4) a fresh start for honest debtors.

The *Orawsky* court recognized that post-BAPCPA, the court's unfair discrimination analysis must center on a debtor's PDI. *Id.* at 150. In arriving at its decision that the debtor's plan did not unfairly discriminate, the court noted that the funding for the plan payments to unsecured creditors was "derived entirely from income that [the debtor] is not legally obligated

14

to commit to the Plan," and that the debtor's intent in making these payments was not "to improve a moderate standard of living or indulge in luxuries, but to make some effort to repay her creditors." *Id.* at 155.[13]

## CONCLUSION

Even post-BAPCPA there are many different tests that courts use to determine whether a chapter 13 bankruptcy plan unfairly discriminates against a class of unsecured creditors. There is no clear "majority" approach, although under each test the justification for differentiated treatment is viewed against the backdrop of the purpose of chapter 13 bankruptcies, including fairness to creditors and a fresh start to honest debtors. For purposes of this decision, I do not need to choose between the various tests, whether the appropriate test is *Lesser/Wolf, Bentley*, or *Machado*.[14] I hold that where the sole allegation for unfair discrimination is payment of a separately classified creditor from an above-median debtor's "discretionary funds," the plan does not discriminate unfairly. Congress has defined "fair" for above-median debtors as PDI. In other words, for purposes of determining whether the chapter 13 plan of an above-median debtor unfairly discriminates between creditors, so long as all of a debtor's PDI is being used to fund a chapter 13 plan, what the debtor chooses to do with his or her discretionary income – whether it is to pay back "more" to an unsecured creditor either within or outside the chapter 13 plan, to go

---

[13] The *Orawsky* court did not go so far as to say that payments made to creditors outside the plan from funds apart from her PDI could never be considered unfairly discriminatory. In fact, the court expressly stated that while the debtor's voluntary contribution of payments in excess of her PDI was a "significant factor" in making its unfair discrimination determination, it did not hold that a debtor has "*carte blanche*" in proposing a discriminatory distribution in a chapter 13 plan funded entirely with 'voluntary' contributions." *Id.* at 156 n.49.

[14] A debtor was, and is, required to prove by a preponderance of the evidence that the debtor's proposed classification does not discriminate unfairly. *Orawsky*, 387 B.R. at 148. The issue before me, however, is strictly a legal issue.

15

Case No. 10-37575-BKC-LMI

on a vacation, or to pay a previously discharged debt, is within the debtor's discretion. As the court stated in *Sharp*, I am not going to "subvert the disposable income test."[15] 415 B.R. at 812.

In the instant case, the Debtor's Amended Chapter 13 Plan proposes to pay all of their PDI[16] to all unsecured creditors other than the holder of the student loan debt. Consequently, the Debtors' decision to use their discretionary income to pay the Student Loan Debt in full outside the Plan is not unfair discrimination.[17] For the reasons stated above, the Trustee's Objection to confirmation is overruled.

# # #

Copies to:
James Schwitalla, Esq.
Nancy Herkert, Trustee

*The Court shall serve a conformed copy of this order upon all parties in interest.*

---

[15] It is not necessary for me to decide the extent to which pre-BAPCPA analysis continues to apply to a chapter 13 plan filed by a below-median debtor who seeks to separately classify and separately pay, a non-dischargeable, non-priority obligation, such as a student loan.

[16] Subject to the resolution of the PDI dispute I described above.

[17] Unlike in *Sharp*, where the debtor included his student loan debt in the class of unsecured claims and just paid the difference outside his plan, in this case the Debtors are paying their entire Student Loan Debt with discretionary funds. Thus, the PDI in this case is not being directed to any payment of the Student Loan Debt. However, my analysis would not likely change even if the circumstances were like *Sharp* so long as the Debtors were directing their full PDI to pay unsecured claims as required by the Bankruptcy Code.